That's all. It's 21-2430. Mr. Flitter. Good morning, Your Honor. Good morning, Mr. Flitter. How are you? Judge Kibbs, Judge Roth, good morning, and may it please the Court, I'm Kerry Flitter, and I represent the appellant, Stephen Ingram, along with co-counsel Brett Bowings. At this point, I would like to reserve two minutes for rebuttal and point out that we have – in this case, amici, we're ceding five minutes of our argument time to counsel for the amici Federal Trade Commission and the CFPB. Excellent. Thanks. We're here on appeal from a grant of summary judgment. Just one minute on some of the facts that I think are important. Our client, Stephen Ingram, was living with his mother, and after she passed, he had to find other housing. In doing that, he was having a difficult time and found that one of the reasons was he was being told there's something on his credit report. What was on his credit report was a listing from Comcast. When he looked into it a bit, of course, he was confused because he never had an account with Comcast. The Comcast service was for an address on 53rd Street in Philadelphia where he never lived. He never had any kind of account with Comcast. He didn't know who lived there. And he ultimately – he engaged a consumer lawyer, Mr. Bullings, who wrote a letter to Comcast. Comcast responded with a long list of to-dos. The reporting at that time was a different – was stellar. Recovery was from a different collector. We're here about the dispute from June of 2018. Let me ask you something. I think we're fairly familiar with the facts. Understanding that Mr. Ingram didn't do what Comcast asked him to do, does that matter in this analysis? It does not matter for why we're here today, no, and that's for two reasons. First off, there's simply nothing in the text of the statute that requires the – essentially a crime victim, Mr. Ingram, to do the investigative work for a furnisher or a creditor. That's their job. Let me interrupt you there. The text of the statute says that they must provide all supporting documentation required by the furnisher to substantiate the basis – excuse me, required by the furnisher to substantiate the basis of the dispute. And so it seems then if you say this text of the statute doesn't require this, it does require something. And so what exactly do you think that the text of the statute does require of your client? Judge Phipps, I believe you were quoting from a section of 1681S2A, and we filed under 1681S2B. So there's two – A hundred percent. Yes, sir. You're exactly right. Okay. But the question that Judge Restrepo asked you was about the request from Comcast, and Comcast's request at least would be under a subsection A sort of thing, because your request comes from through Experian, which is the subsection B part. I guess I'm just asking, though, under subsection A, what information would your client need to have provided on Comcast's request? Well, even under – so let me answer your point and explain why we think that's not applicable, all reasonable documentation. I think it's noteworthy that someone like Mr. Ingram, who's had nothing to do with the account, is not going to have much documentation. He can perhaps identify himself and say it's not mine, but this is not a case where somebody's challenging the balance and the creditor or the furnisher will say, well, show me your canceled checks proof of payment. When an identity theft victim or a consumer says, this is not my account, he's got very little to do with it. He signed an affidavit. He didn't. Comcast requested an affidavit, and he didn't sign that. Comcast requested an affidavit. He didn't. Shortly after that, the first listing, which – Judge Roth, are you asking me something, Your Honor? Yes. I mean, we're talking about subsection B, not subsection A, so why don't you tell us very concisely why we're under subsection B and we don't have to worry about subsection A? Right. So the statute was set up, Your Honor, with two distinct schemes, one for direct disputes to the furnisher and one for what's called indirect disputes where the consumer goes to the consumer reporting agency and lodges his dispute. The statute sets up the CRA, Equifax, Experian, TransUnion, as the entity to do an initial screening of the dispute. If they find it frivolous or irrelevant or inadequate for some reason, they have a fixed number of days to write back to the consumer and say, we're not treating your dispute as a valid one. Add this information. They did not do that. The credit bureau accepted it as a bona fide, as a valid dispute, sent it on to Waypoint. At that point, 1692B, excuse me, yes, 1681S2B, excuse me, the operative section says shall. Once the credit bureau sends the dispute, screens it, and sends it to the furnisher, the furnisher shall investigate it. And a point of fact here, they did investigate it. It's irrelevant than what was done prior to Mr. Ingram sending his complaint to the CRA? Yes, Your Honor. The And do they want to assume and then send it on? And that's why we're dealing with an indirect complaint rather than a direct complaint, and that's why we're under 2B1C. Yes, Your Honor. Yes, Your Honor. And I do understand Judge Fitz's question about the additional information, but there's no private right of action under the 1681S2A. We wouldn't be here. So, you know, the reason why the system's in place is because with a direct dispute, it's not prescreened. So the furnisher has to determine right up front, ab initio, whether it appears frivolous or irrelevant, and then the furnisher can write back asking for more. Once it goes through the CRA, the law is clear. Sims-Paris case in this court and the Baggio case out of the Sixth Circuit, the law is clear that there's no discretion in the furnisher to demand more information before investigating. Reduced to its essence, your argument is that the district court imported this bona fide dispute language to the relevant section. Yes. Yes. So subsection A has an exception when the dispute comes directly to the furnisher and it says one of the ways it can be frivolous or it is if you've already adjudicated or, excuse me, investigated that same dispute. But I don't think there's that same exception under subsection B. And so at one level, does that mean that Congress, in enacting this statute, sought to make furnishers do the same work multiple times under subsection B when it contemplated that they would not do double work under subsection A? Well, I think in that case, your Honor, that would be taken into account in the CRA's initial screening of the matter. The CRA, the Consumer Reporting Agency, looks at it, and presumably if it determines that's been disposed of before, they'll notify the consumer. And there's an important notification point here, if I may, if I may just finish this point. Both sections require immediate notice. I think it's five business days to the consumer if they think something's wrong with the dispute. Comcast is really not part of this troika here. Comcast is not the furnisher. Comcast is certainly not the CRA. They were the creditor. And they were Waypoint's principal. But there's certainly no duty in invoking the remedial procedures of 1681S2B to respond to essentially asking a creditor with whom you had no relationship to deputize the consumer to do all its investigative work. Comcast should employ hundreds of investigators to find out how it is they got scammed. But a little bit back to my question, it does sound that your reading of the statute contemplates that a person providing information to a consumer reporting agency under subsection B may have to do the same investigation twice or three times if the consumer reporting agency doesn't screen it out. If they received it directly and done their investigation and then the consumer reporting agency doesn't screen it out, then what you're saying is this scheme, Congress contemplated that they would have to do the exact, they would have to redo an investigation, I guess, from scratch all over again. And so you're asking for a reading of the statute that imposes a double investigation duty. Your Honor, I would disagree with that respectfully for two reasons, if I may. The first is, as a practical matter, a second dispute or a third dispute, sometimes they don't fix it the first time, will often carry additional information. It will have more detail. It will attach a copy of a bill or some other identification or what have you that didn't come with the first dispute. But to the more specific question, yes, it may be that a credit furnisher has to respond, as in this case, to a direct dispute and also to an indirect dispute. The fact is here that it was a completely unreasonable cursory investigation of 13 seconds, but they did investigate, if you will. This whole business about the added requirement of providing all this additional information and affidavits and passports and the names of known parties is quite beside the point. They did an investigation. The district court found that despite that, they had no duty to do an investigation because the consumer didn't respond to the earlier Comcast request. And that's simply not how the statute is structured. Shall is obviously a term of specific direction, and Waypoint had a specific legal obligation to respond to the indirect dispute. Judge Roth, anything else? No, nothing further. Thank you. Thank you, Your Honor. Thank you. Good morning, Mr. Cooper. Good morning. May it please the Court. I'm Ryan Cooper here on behalf of the Consumer Financial Protection Bureau, which is participating in this matter as amicus. The text and the structure and the remedial purposes of the FCRA all indicate that a furnisher is required to conduct a reasonable investigation of any dispute submitted by a consumer to a credit reporting agency and then forwarded to the furnisher. Let's begin with the text. 15 U.S.C. 1681 S2B1 states that after receiving notice of a dispute from a credit reporting agency with regard to the completeness or accuracy of any information in a consumer's credit reports, a furnisher shall conduct an investigation with respect to the disputed information. So an investigation was conducted, albeit 13 seconds, right? An investigation was conducted here. That's correct, Your Honor, in the sense that Waypoint purports to have conducted an investigation in reference to the sort of activities that occurred in those 13 seconds. But the district court here never reached the question of whether or not that investigation was reasonable. And that's a fact-intensive question. This Court has held that the reasonableness of an investigation requires balancing, on one hand, the investigative burden that would be required to sort of screen for inaccuracy against, on the other side of the ledger, the harm to the consumer from that inaccuracy. So what's a reasonable investigation look like? Well, this Court, Your Honor, has said that a reasonable investigation is, in part, a function of the informational proffer made by the consumer in their dispute. And so a reasonable investigation might look very different if a consumer submits a dispute with a one-sentence explanation of the, you know, nature of their concern with the information that was reported in their credit report versus a dispute where someone, a consumer, might make a substantial, you know, documentary proffer. And that's a fact-intensive question. Here, the district court never reached that question. And we think that the way this case should have been resolved was by looking to that question and determining whether there was, you know, a material issue of fact on the reasonableness of the investigation, rather than sort of creating an atextual sort of threshold requirement that the dispute be sort of non-frivolous, which finds no support in the text of the statute. And, you know, the Sixth Circuit has previously analyzed this exact statutory language in BOGO v. USA Federal Savings Bank, and it held, and I quote, the text of Section 1681 S2B does not permit furnishers to require independent confirmation of materials contained in a CRA notice of dispute before conducting the required investigation. And in that case, much like here, the furnisher argued that it was not required to conduct an investigation at all as a threshold matter because the consumer had failed to submit a police report that was required by the furnisher's fraud policy. And the Sixth Circuit squarely rejected that argument on textual grounds. So you keep going back to textual grounds. I get it. In the reply brief, there's a notion that maybe there should be some interplay of Skidmore deference here. But Skidmore deference, agencies don't get deference for their construction of a statute. They might get deferences for their resolution of an ambiguity. But the application of the canons, that's kind of left to the judges. So are you making any play here or any assertion here that there should be an exercise of Skidmore deference for expertise beyond statutory construction? No, Your Honor. I mean, I'm simply here to provide the Bureau's sort of considered views on a statute that it enforces. And I think, you know, we are certainly happy to defer to this Court's expertise on statutory construction. In your argument, really, from what I can tell, your amicus brief is just basically a statutory construction tour de force. You're saying we've got subsection B, we've got subsection A. Don't import parts of subsection A into subsection B. Is that, in a nutshell, what you're saying? In a nutshell, yes, Your Honor. I think that is the core of our argument. It's a textual argument. It's an argument, I think, consistent with the Sixth Circuit's holding in Baggio. And we believe that, you know, Congress knew how to create exceptions. This is a carefully constructed statutory scheme. And Congress knew how to require documentary proffer on the part of the consumer. It knew how to give a business entity the right to request additional documents. And it elected not to do so in 1681 S2B. And we think that that election was intentional and reflects, you know, is clear. The congressional intent and the language of the statute is clear. I do think beyond the mere text, there are, you know, a few structural points that we make as well. And one that I wanted to sort of hit on was that, you know, a consistent thread throughout the statute is the right of notice and an opportunity to cure. And another point we've made in our brief, and I see that I'm out of time, so I'll just say, you know, quickly, is that the interpretation offered by the district court risks sort of allowing a complaint to escape into a black hole and to sort of create no mechanism for that sort of notice and opportunity to cure to be provided. And so that's, I think, another concern that we tried to articulate. Judge Roth. Thank you, Mr. Cooper. Thank you. Good morning, Mr. Helwig. Good morning, Your Honors. I'm David Helwig. I'm representing the APALE, Waypoint Resource Group. The first point I'd like to address is the ruling here only will apply in a very limited factual context, which is the context of this case. The consumer is not required to dispute a debt or report a debt with a creditor. However, the statute provides that when the consumer does so, certain rules apply. And the creditor may, not required to, but may request some information. If Waypoint had not done so in this case, then I would agree that the provisions of, you know, but here Comcast did attempt to conduct an investigation, first when Mr. Ingram contacted it directly, and then subsequently when his counsel contacted. Are Comcast and Waymart positioned in the same position, so to speak, in this matrix? I don't think they're in the same position, Your Honor, but I think that the interpretation of the statute that appellant requests would nullify the provisions of the statute that apply when the consumer does dispute the debt directly with the. Well, when they do dispute it directly, though, they have no recourse to federal court, do they? Well, not initially, but here the matter was disputed, raised a second time. Comcast requested information. The consumer provided no information, you know, by his counsel, nor did the consumer's counsel say, we're not required to provide this. There was no, they never disputed the request to provide the additional information or claimed that the information which was sought was too broad. They just did not respond. But there's not many opportunities to judicially review that subsection D provision because there's no judicial review there. So it seems that Comcast can maybe just request whatever information it wants, however onerous, recognizing that in the direct dispute process, they'll never ever have to be subject to judicial review. And so it seems really strange to sit there and then validate the amount of information that they can request indirectly later when there's never a check on how much they can ask for. What if they asked for all of Mr. Ingram's credit card bills for the previous six years and he didn't provide them? There'd be no check on that, would there? Well, the check would be that if the request for information was excessive or thought, you know, sought irrelevant information, then later on it could be determined that the determination such as it was was not valid because how, who would do that? There's no judicial review provision unless we go in the indirect prong. Who would make that determination? Well, I think that the sections of the statute that give direct rights of action does implicate the ability of the court, which has happened here at the district court level, to make a determination. Is that only because we have an indirect dispute, though? If there had been no indirect dispute here, how would we ever be looking or ever even know what information Comcast requested? Your Honor, I believe that the court could review the determination by Comcast, or in this case a non-denominational Well, impliedly, the determination was that it was a frivolous claim, because Mr. Ingram's counsel neither provided the information, nor did he dispute that, you know, the information sought was unreasonable or irrelevant. I mean, basically, you know, Apellee and Meeke are arguing about the fact that, you know, they have this carefully delineated scheme, but if it's such a carefully... The ruling that they're seeking here would eliminate or nullify the part of the statute that applies in this situation, where a consumer raises a dispute directly with the creditor, and then the creditor responds and says, sure, let us investigate, provide us some information. I mean, why even allow consumers to dispute directly with creditors? Why have that provision in the statute? Well, subsection B doesn't provide for an exception to the furnisher's duty to investigate the dispute. And there was an investigation here, right? There was a, albeit short, was that a sufficient enough investigation to satisfy the requirements of the statute in this case? Well, Your Honor, that issue is not before the Court, because the District Court addressed that issue and said that would be a jury question. So I don't think the sufficiency of the... I mean, there was... Well, Apoint did attempt to investigate. Basically, they went back to their customer, Comcast, to find out what Comcast could say, and Comcast said, no, it's a good, it's a valid bet. Is your understanding of their position that the District Court imported this bona fide dispute language into subsection B? Well, I think the Court did that. I mean, I think it did so properly. You know, why should... If a consumer chooses to dispute directly, and if the creditor acts on that request, why should the wheel have to be reinvented? Particularly here, where, you know, there was never an issue raised about the... Well, I mean, that rhetorical question is maybe one for Congress, but Congress answered that by using the word shall and saying that you shall do this. And so I don't know that we can do much with that rhetorical question, but I think what's really interesting is that there was no right of action that attaches to subsection A direct disputes. So I think there is wisdom to what Congress did. Congress said, if you want to go try to work this out amongst yourselves, with the furnisher and all, do it. This is how we'd like to see it done. If that doesn't work, oh, we can let you into court some other way, and there might be a different allocation of duties and responsibilities there. But to sit there and say that, oh, we like this kind of more informal way, without the possibility of judicial review, we just had amicus tell us that that offends both the text and the structure of Congress's statute. Is there something that you could tell us that this doesn't offend the text and doesn't do damage to the structure? Only by implication in that why have the provision for direct dispute if when the consumer makes a direct dispute and the creditor responds to it, and then the consumer, through his counsel, doesn't say, oh, no, you can't ask for this information or anything. I mean, there was never a response to the inquiry directly from Comcast. So this might be a little bit of an aside, but how is a court ever going to weigh in on the information that Comcast requested, if that's not subject to judicial review? If Comcast requested six years of Mr. Ingram's previous credit card statements, is there ever an avenue for judicial review of that, other than possibly in a case like this, to say that that doesn't work and that that bears on reasonableness? It seems that Comcast, and by implication your client, are taking a lot of liberties with the provision of the statute that lets them request information seemingly to their heart's content, knowing that there's not judicial review for what they request. I think in the context of this case, there could be judicial review. We could review what Comcast requested in this case to comment on it being inordinate or too burdensome? I believe the court could. There has to be some sort of review, some sort of remedy, if the creditor requests information that's not relevant or excessive. Well, we may be able to comment on it. Do we have jurisdiction over that dispute, a Subsection A dispute? Well, certainly the court has subject matter jurisdiction over this claim. It would have to be a bleak comment, right? It would have to be as that bears on Subsection B duties of investigation, perhaps? But if we did that, maybe that helps your point, because that would bridge the gap between Subsection A and Subsection B. Maybe? Yes. Your Honor, I'm happy to, I mean, I think I've made my basic point, which is that the argument made here by an appellant would nullify another section of the statute. But I do just want to briefly address the waiver issue, because everything we're talking about here was not raised before the district court. At the district court level, they never addressed the court's holding in the Palauian case or the Knoll case, nor did they address the section of the statute on which the motion was predicated. The reply brief didn't do so, or the response brief, appellant's response brief didn't do so. Waypoint's reply brief raised the failure to address those cases. There was never a request for a sir reply brief made by appellant, and I respectfully submit that both the jurisprudence of this court and of the Supreme Court would apply and that there would be a waiver. I don't think waiver is limited to waiver of claims. I think it does apply to waiver of issues, and I think it's perfectly clear that before the district court, the appellant did not address the issues on which the motion for summary judgment was predicated. I realize the issue of waiver is very much a matter for the court's discretion, but I don't think it's suggested by appellant's counsel that it's limited to waiver of claims. I think the doctrine also applies to waiver of issues. So if we suppose that's correct and we assert waiver, but what if we bind a waiver? It puts us in a little bit of a strange box, because let's say we otherwise agree with appellants, then we assert waiver, we would somehow, due to the doctrine of waiver, reach an interpretation of a statute that we disagree with, or we just say that, because sooner or later we're going to have to confront the question of how the statute should be interpreted, right? Yes, but if there's a finding of waiver, then the court has not addressed the issue. It's not that it has agreed with the position taken by appellee. It's just simply a waiver issue, and waiver serves a purpose. I mean, it can have harsh consequences, but it is solidly a part of the jurisprudence of both the Supreme Court and this Court and other circuits. Thank you. Mr. Fuller, could you start with the waiver issue? Yes, Your Honor. There's been no waiver here. Obviously, there's been no express waiver except a waiver of the review of the fair debt claim. To the extent that Waypoint's talking about forfeiture, the rule requires us to advance the claim below that was advanced here. This is not a new claim. Our claim below was a violation of S2B and an unreasonable investigation. That was briefed. That was argued. There was a robust record. Depositions were taken of Waypoint. There was a robust record of the conduct of the furnisher and how it did not meet the requirement for a reasonable investigation. We cited to the Sims-Paris case, probably the leading case in the circuit. Cortez, Mr. Ingram cited to all the necessary cases, and the waiver jurisdiction really hasn't required the Thompson case we cite in our brief, Thompson against Real Estate Network. It doesn't require an appellant, a party appealing, I should say, to have shown that every case was cited below. What they're talking about is two district court cases, two or three district court cases that adopted A, and the argument that A, that the provisions of 1681S2A should prevail here. So while counsel didn't engage below in an extended argument about the district court cases, that's not a waiver, we advanced our claim, explained the facts, made a robust record of why it was an unreasonable investigation and why there was causation of harm. We couldn't really predict that perhaps a district court would go and decide this off of A. I want to add one thing, if I may, if I've answered waiver. This whole argument about the A versus the B and importing A into B is really an after-the-fact litigation argument only. I mean, look at what happened here. There was a dispute, the consumer went to Waypoint saying, this is not my account, please remove from my credit. That's not a particularly vague dispute. It's not a dispute that says I don't owe it or the bill's too high or something. This is not my account, remove it from my credit. And the CRA screened it, Waypoint accepted it as a valid dispute, and they did their 13-second cursory investigation. All of this should be subsumed on remand under the rubric of the reasonableness of the investigation that Waypoint did or didn't do based upon the dispute that was provided to them and the other information they had in their file that this was a fraud. They had information from the direct dispute process that this was a fraudulent account. So the matter should be remanded for the Court's further consideration of the summary judgment and, if appropriate, a trial on the reasonableness of Waypoint's investigation. Thank you, Mr. Fuller. Thank you, Your Honor.